**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

PATRICK J. QUESENBERRY,                          *

Plaintiff,                                                    *

v.                                                                *          Civil Action No. ELH-21-2450

ROBERT L. GREEN*, et al.*,                           *

Defendants.                                              *
                                                                ***

**<u>MEMORANDUM OPINION</u>**

Patrick J. Quesenberry, the self-represented plaintiff, filed a civil rights suit on September 24, 2021, against three defendants, pursuant to 42 U.S.C. §§ 1983 and 1985.  ECF 1.  Plaintiff has appended several exhibits to the suit, docketed at ECF 1-1.  The defendants, who are sued in their individual and official capacities, are Robert Green, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Frank Bishop, Jr., the former Warden of North Branch Correctional Institution ("NBCI"); and Anna Williams, an employee of the Maryland Division of Correction ("DOC").  Quesenberry alleges that defendants violated his rights under the First and Fourteenth Amendments to the Constitution.  Plaintiff seeks compensatory and punitive damages as well as injunctive and declaratory relief.

Defendants have moved to dismiss or, in the alternative, for summary judgment.  ECF 22.  The motion is supported by memorandum (ECF 22-1) (collectively, the "Motion") and exhibits, including declarations of Correctional Supply Officer II Anna Williams (ECF 22- 4); Correctional Case Management Specialist II Benjamin Bradley (ECF 22-5; ECF 22-12); Correctional Dietary Officer Lieutenant Kermit A. Sipes (ECF 22-6); Correctional Officer Sergeant Allan Graham (ECF 22-7); Office Supervisor Melissa Bonner (ECF 22-8); and F. Todd Taylor, Jr., Director of the

Inmate Grievance Office ("IGO") (ECF 22-9). Quesenberry was notified of his right to respond to the Motion (ECF 23) and he has done so.  ECF 27; ECF 28.[1]  He also submitted exhibits. Defendants filed a reply.  ECF 29.

No hearing is necessary.  *See* Local Rule 105.6.  For the reasons discussed below, I shall grant the Motion.

## I.      Background

### A.  Plaintiff's allegations

On October 12, 2018, Quesenberry was confined at NBCI in Cumberland, Maryland and assigned to work in the kitchen.  ECF 1 at 4.  On that date, he was removed from his kitchen job.

According to Quesenberry, on October 12, 2018, Lt. Sites directed him to gather his things and return to his housing unit because Williams, who worked in the NBCI "Dietary Department," *id.* at 2, had reported that Quesenberry "made her feel uncomfortable working around her."  *Id.* at 4. A few days later, Quesenberry was advised by his case manager, Shayla Lease, that "he is being reclass to job bank sanitation" due to statements made by Williams about Quenseberry in a Matter of Record ("MOR") that Williams prepared. *Id*.

Quesenberry requested a copy of the MOR from Bishop but received no response. *Id*. Sometime later, Quesenberry received a copy of the inmate job assignment removal form ("JAR"). *Id.*  It said: "Reclass inmate and do not reconsider for rehire in foodservice. See attach MOR from Ms. Williams, OSIII."  *Id*.

According to Quesenberry, Williams reported that from October 9 to October 11, 2018, Quesenberry "had been waiting and watching" for Williams "to come out of the office" and calling

---

[1] ECF 28 is titled "Plaintiff's Opposition to Defendants [sic] Declaration Submitted in Bad Faith Summary Judgment Rule 56(h)." I shall construe it as an opposition.

her over to talk to him. *Id.* at 5. Further, she reported that on October 12, 2018, Quesenberry called her by her first name and remarked on her talking to people who did not have the same skin color as either of them "and said this was making her look bad." *Id*. Williams also reported that Quesenberry told her another inmate had her cell phone number and that "he was going to pass it along to get [Williams] into trouble . . . ." *Id*. Quesenberry asserts that, as a result of Williams's allegations, he lost the privileges of his job, his pay, and his single cell, without any opportunity to refute the allegations. *Id*. He also claims that Williams wrote the MOR as retaliation. *Id*. at 6.

Quesenberry reports that he challenged the MOR and the removal from his kitchen job administratively and judicially.  But, each effort was unsuccessful.  ECF 1 at 5-6.

On September 7, 2020, Quesenberry was transferred to Western Correctional Institution ("WCI").  *Id.* at 6.  At the time of the filing of the Complaint, he was awaiting assignment to a sanitation job.  *Id.*

B.  Defendants' response

In October of 2018, Quesenberry was employed in the Dietary Department of NBCI as an inmate foodservice worker. ECF 22-4 (Williams Decl) at 1, ¶ 2. At the time, NBCI had an inmate population of 1,188 and there were 755 authorized inmate job positions. ECF 22-12 (Bradley Decl.), ¶¶ 4-5. Williams was an Office Secretary III, assigned to the NBCI Dietary Department. ECF 22-4 at 1, ¶¶ 2-3.  On October 12, 2018, Williams wrote a MOR as well as a JAR indicating that there were several incidents throughout that week where Quesenberry watched her, disregarded his work duties, refused orders to return to work, and attempted to engage in inappropriate and unwanted conversations with her. *Id*. at 1-2, ¶¶ 4-6; ECF 22-5 (JAR) at 2, 3.

The JAR, consistent with DOC policy, was reviewed by Correctional Dietary Officer Lt. Sites, who approved the recommendation of Williams that Quesenberry be removed from his

dietary job. ECF 22-5 at 2; ECF 22-6 (Sites Decl.), ¶ 4.  The paperwork was then presented to Correctional Officer Sgt. Graham, an employee of the NBCI Traffic Office, which is responsible for controlling inmate movement within the prison, and to NBCI Case Management Office Supervisor Bonner, who processed the forms.  ECF 22-5 at 2; ECF 22-6, ¶ 4; ECF-22-7 (Graham Decl.) at 1-2, ¶¶ 6-7; ECF 22-8 (Bonner Decl.), ¶¶ 4-5.  Ultimately, a Case Manager removed Quesenberry from his dietary job and reassigned him to job bank sanitation. ECF 22-5 at 9, 15; ECF 22-8, ¶ 4.

As a result of plaintiff's removal from his job, Quesenberry filed an Administrative Remedy Procedure ("ARP") contesting his removal from the job and alleging that the removal was in retaliation for exercising his right to "free speech."  ECF 22-5 at 4-8; ECF 22-9 (Taylor Decl.), at 1, ¶ 2.   The ARP was denied at the institutional level and on appeal, as job assignments for inmates are within the discretion of the Warden or his designee and are not reviewable. ECF 22-5 at 4; ECF 22-9 at 2, ¶ 2 (citing Code of Md. Reg. 12.02.28.04(B)(3)).

Quesenberry pursued his complaint to the IGO, which also found the claim to be without merit. ECF 22-9 at 2, ¶ 2; ECF 22-9 at 8-9, 14-18.  Quesenberry appealed the dismissal of his IGO complaint to the Circuit Court for Allegany County.  ECF 22-9 at 2, ¶ 3.  After a hearing on the merits, the court affirmed the decision of the IGO and dismissed the case.  *Id.* Quesenberry's Application for Leave to Appeal, filed in the Maryland Court of Special Appeals (now called the Appellate Court of Maryland), was denied on April 10, 2019. *Id.*; *see* ECF 22-11 at 2.

## II.    Standards of Review

### A.

Quesenberry is self-represented.   Therefore, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so

construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

## B.

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 13. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*,

437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Quesenberry attached to his opposition to the Motion a "Motion for Summary Judgment Rule 56(d)," (ECF 27), in which he states that "for specified reason he cannot present facts essential to justify his opposition" as to a number of defendants' arguments.  *Id.* at 6. In support of his statement, Quesenberry avers that he is unable to obtain an affidavit or declaration from a shift commander at NBCI because he was transferred to WCI in September of 2020. *Id.*

Quesenberry notes that Williams referred to a shift commander in her MOR but the JAR form which bears the signature of a shift commander is not legible. *Id*. at 7. Further, Quesenberry contends that the shift commander was responsible for reviewing JAR forms and making final decisions about whether to forward or reject the document and notes that Lt. Sites is not a shift commander. *Id*.  Quesenberry also states that he does not know a Lt. Kermit Sites. *Id*. However, Quesenberry does not explain how identifying the shift commander and/or procuring an affidavit from the shift commander is necessary to his opposition. He does not explain what information the shift commander would provide or how that information is necessary to his defense.  Accordingly, his request for discovery is denied.

I am satisfied that it is appropriate to address defendants' Motion as a motion to dismiss as to defendants Green and Bishop and as one for summary judgment as to defendant Williams.  This approach will facilitate resolution of this case.

## C.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom*., *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  A

Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'...."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally

insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if...[the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), cert. denied, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Through a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies...if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodma*n, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein...." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger.,* 510 F.3d at 450.

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the

complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (internal citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)); *see USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, __ F. App'x __, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021) (per curiam).  And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.  In other words, the "general rule" is that "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *Id.* at 165.  But, "in cases where the plaintiff attaches or incorporates documents for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of the document as true." *Id.* at 167.

### D.

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th

Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat*, 346 F.3d at 522 (quoting former Fed. R. Civ. P. 56(e)).  Moreover, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540

(4th Cir. 2015) (internal quotation marks omitted).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)). And, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir.

1987); *see also, e.g., Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012).  And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007). But, if testimony is based on personal knowledge or firsthand experience, it can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving.  *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 Fed. App'x 209, 212 (4th Cir. 2017).  Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'"  *Cowgill v. First Data Technologies, Inc.*, 41 F. 4th 370, 383 n.8 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

In sum, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact.  *See Anderson*, 477 U.S. at 247-48.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment.  *Id.* at 248; *see Judd*, 718 F.3d at 313.  On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

### III.    Discussion

#### A.  Official Capacity Claims

To the extent Quesenberry has sued a defendant in his or her official capacity, seeking monetary damages, his claims may not proceed.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth*., 535 U.S. 743, 760 (2002).

Sovereign immunity "protects the States, their agencies, and State officials acting in their official capacities from being sued in federal court without their consent." *Murphy v. Commonwealth of Virginia*, 2022 WL 17484286, at *1 (4th Cir. Dec. 7, 2022) (per curiam); *see Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018).

The Supreme Court has explained: "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suit for damages by citizens against their own States." *Garrett*, 531 U.S. at 363 (collecting cases); *see Pense v. Md. Dep't of Public Safety and Correctional Services*, 926 F.3d 97, 100 (4th Cir. 2019) ("The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'") (quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)); *see also*, *e.g.*, *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, __ U.S.__, 140 S. Ct. 903 (2020).

Sovereign immunity is "a weighty principle, foundational to our constitutional system." *Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021). Moreover, the defense of sovereign immunity is a jurisdictional bar. As the Fourth Circuit has explained, "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___U.S. ___, 139 S. Ct. 417 (2018). Thus, in the absence of waiver or a valid congressional abrogation of sovereign immunity, the states enjoy immunity from suits for money damages brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890).

Sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an "arm of the state." *See Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense*, 926 F.3d at 100; *McCray v. Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005). Put another way, sovereign immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195-96 (4th Cir. 2016) (quoting *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (cleaned up).[2]

And, of relevance here, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks omitted)); *Murphy*, 2022 WL 17484286, at *2. But, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject

---

[2] In contrast, sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta by and through Ram Ditta v. Md. Nat. Capital Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).

matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)); *see DiCocco v. Garland*, 18 F.4th 406, 414 (4th Cir. 2021).

There are three exceptions to the Eleventh Amendment's prohibition of a suit against a state or an arm of the state. *In Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. Frew ex rel. *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

As mentioned, a state may waive its sovereign immunity and permit suit in federal court. *See Lapides*, 535 U.S. at 618; *see also Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a state has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996); *see Pense*, 926 F.3d at 101. Under *Atascadero*, 473 U.S. at 254, a court may find that a state has waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." (internal quotation marks and alteration omitted); *accord Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 250-51.

The State of Maryland has not waived immunity for claims brought against it in federal court, pursuant to § 1983. Based on the foregoing, the individual defendants, in their official capacities, are immune from suit for monetary damages under 42 U.S.C. § 1983.

In contrast, the Eleventh Amendment does not bar plaintiff's request for prospective

injunctive relief.  I discuss plaintiff's claim for injunctive relief, *infra*.

B.  Personal Participation

It is well settled that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The Complaint does not allege any personal participation by Green, the Secretary of DPSCS, or Bishop, the former Warden of NBCI, in regard to the removal of Quesenberry from his dietary job. Other than being named in the caption of the Complaint, and stating that Green and Bishop were aware of the MOR filed by Williams and deliberately indifferent to Quesenberry's claims regarding his removal from his job,  these defendants are not mentioned anywhere in the factual allegations of the Complaint.  Quesenberry does not attribute any action or inaction to these defendants that resulted in his removal from his prison job.    Simply stated, Quesenberry's allegations fail to state a claim against defendants Green and Bishop.

C.  Respondeat Superior

Quesenberry clarifies in his opposition that he seeks to hold Bishop liable because, as Warden, Bishop is responsible for everything that happens at NBCI. ECF 27 at 7. However, the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).[3]  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed

---

[3] Respondeat superior is a legal doctrine that provides an employer is liable in certain instances for the wrongful acts of an employee.  *See Black's Law Dictionary* (8th ed. 2004).

to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Ultimately, to establish supervisory liability under § 1983, the plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). At this juncture, the plaintiff must allege facts that, if proven, would establish such liability.

Where, as here, a plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a constitutional injury, the claims against supervisory personnel must be dismissed. As such, Green and Bishop are entitled to dismissal.

## D. Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983. To establish a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the prison context, there are two different types of constitutionally protected liberty interests that may be created by government action. The first occurs when there is a state-created entitlement to an early release from incarceration. *Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (state-created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)

(state-created liberty interest in good-conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005) (applying "[t]he *Sandin* standard"). As the Fourth Circuit has noted, "[t]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997).

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). But, courts generally defer to decisions made by officials relating to their administration of a prison facility. *Bell v. Wolfish,* 441 U.S.520, 547 (1979). As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

It is well established that prisoners do not have a constitutional right to access jobs or to demand to be housed in one prison rather than another, absent a showing of significant hardship. *See Sandin*, 515 U.S. at  484; *see also Kitchen v. Upshaw*, 286 F. 3d 179, 187 (4th Cir. 2002) (holding inmate had no liberty interest in participating in work release program and therefore not entitled to due process protections); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (holding work assignments are at prison officials' discretion); *Callender v. Sioux City Residential Treatment*

*Facility*, 88 F.3d 666, 669-70 (8th Cir. 1996) (holding no liberty interest in work release and termination from work release not atypical hardship); *Lee v. Governor, State of New York*, 87 F.3d 55, 58 (2nd Cir. 1996) (finding no liberty interest in work release); *Dominique v. Weld*, 73 F.3d 1156, 1160-61 (1st Cir. 1996) (holding loss of work release did not implicate a state created liberty interest).

An inmate is simply not constitutionally entitled to a prison job.  "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." *Altizer* 569 F.2d at 813; *see also Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir. 1980) ("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); *Weinberger v. United States,* 268 F.3d 346, 361 n. 6 (6th Cir. 2001) (discretion vested in corrections officials to set conditions of employment precludes implication of a liberty interest); *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir. 1989) (same); *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir. 1986) (Constitution does not create a property interest in prison job).  Therefore, no due process liberty interest is implicated here, and Quesenberry was not entitled to a hearing or an opportunity to be heard on the issue of his employment in a state prison. *See Sandin,* 515 U.S. at 484.

In analyzing inmate assignments to programming, jobs and housing, the court must consider a correctional system's need to maintain order, discipline, and control. *See Sandin*, 515 U.S. at 482 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

This Court is unaware of any Maryland law or regulation conferring a protected liberty interest on DPSCS inmates that has been abridged here. As stated, Quesenberry had no liberty interested in being assigned to a prison job or remaining in that job once assigned. Williams sought to have Quesenberry removed from his position based on her perception of plaintiff's conduct and her concerns as to security and safety at the correctional institutional. This did not violate Quesenberry's rights.

Reviewing Quesenberry's allegations in the light most favorable to him, there are no genuine issues of material fact and Williams is entitled to summary judgment in her favor concerning Quesenberry's Fourteenth Amendment claim.

### E.  Retaliation

Plaintiff claims that he was removed from his dietary job in retaliation for the exercise of his right to free speech. Notably, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," but "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although prisoners retain First Amendment rights, those rights are not unlimited and may be curtailed by prison officials under appropriate circumstances. *Jones v. N.C. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (upholding prison regulations limiting prisoner's speech regarding the operation of a prisoner union).

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation

for exercising a First Amendment right, a plaintiff must allege that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *cf. Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (outlining elements of a Title VII retaliation claim) .

A plaintiff can establish retaliatory conduct if the defendant took an action against the plaintiff that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quotation marks and citation omitted). A plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity, and that the retaliatory act was temporally proximate to that activity. *Id.*

In the prison context, courts "treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). As such, an inmate cannot simply assert a generalized retaliatory animus but must allege facts that support the claim of retaliation. *White v. White*, 886 F. 2d 721, 724 (4th Cir. 1989). Moreover, a retaliation claim fails if there is a legitimate reason for the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Quesenberry does not dispute that the information written by Williams in the MOR was accurate. Rather, he seemingly claims that his conduct and speech directed at Williams were protected because he is free to say whatever he wants at any time. Williams directed Quesenberry to return to work and to stop trying to engage her in conversation. He declined to do so. Quesenberry's conduct made Williams uncomfortable. Therefore, she reported his conduct and requested he be removed from his position and not reassigned to dietary—a request in furtherance of penological objectives.

There is no evidence that Quesenberry was engaged in protected speech or that he was removed from his job because of that speech. Rather, Quesenberry allegedly failed to perform his job as assigned and engaged in an inappropriate conversation with a correctional employee. His inability to follow the parameters of his job led to the removal from his position. Quesenberry's assertion that he was removed from his job because he engaged in "free speech" is nothing more than an impermissible effort to bolster a frivolous complaint by adding allegations of retaliation. *See Brown v. Carpenter*, 889 F. Supp. 1028, 1034 (W.D. Tenn. 1995) ("A plaintiff cannot bootstrap a frivolous complaint with conclusory allegations of retaliation."). Williams is entitled to summary judgment on Quesenberry's retaliation claim.

F.     Violation of Policy

If Quesenberry's intention is to assert that defendants violated State policies, procedures, rules, regulations, or State law, the mere violation of State law or regulation does not provide a basis for a due process violation. *See, e.g. Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Riccio v. Cnty. of Fairfax, Va.,* 907 F.2d 1459, 1469 (4th Cir. 1990) ("If the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide that law is not a federal due process issue"); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md.

2015) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).  Accordingly, any First or Fourteenth Amendment claim Quesenberry seeks to raise in connection with the procedures used to remove him from his prison job is without merit.[4]

G. Injunctive Relief

Quesenberry seeks injunctive relief.  ECF 1 at 7, ¶ 27.  In particular, he appears to seek an order barring defendants from violating his constitutional rights.  *Id.*

A party seeking a preliminary injunction or temporary restraining order must establish the following elements:  (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For the reasons discussed above, Quesenberry has failed to demonstrate the likelihood of success on the merits.  Therefore, his request for injunctive relief must be denied.

## IV.   Conclusion

For the foregoing reasons, I will grant defendants' Motion.[5]  In particular, I shall dismiss the claims against defendants former Secretary Green and former Warden Bishop.  And, I shall grant summary judgment in favor of Williams.

An Order follows.

_____January 6, 2023_____          _____/s/_____
Date                                    Ellen L. Hollander
                                        United States District Judge

_____

[4] To the extent the Complaint can be construed as raising state law claims, the Court would decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

[5] I need not consider defendants' additional defenses of qualified immunity and collateral estoppel.